## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT C. ALLEN, as
Co-Administrator of the Estates of
T.G.A. and Z.D.A.,

No. 4:21-CV-00156

(Chief Judge Brann)

Plaintiff,

v.

FOXWAY TRANSPORTATION,
INC., *et al.*,

Defendants.

## MEMORANDUM OPINION

### JANUARY 27, 2022

## I.    BACKGROUND

On April 22, 2021, Plaintiff Robert C. Allen filed a twelve-count Amended Complaint as co-administrator of his minor children's estates. The case is predicated on this Court's diversity jurisdiction and brought under state law. Defendants include Foxway Transportation, Inc., Gateway Freight Systems, Inc., Tempel Steel, and State Farm Mutual Automobile Insurance Company.

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), Foxway moved to dismiss and, alternatively, to transfer venue. Gateway also moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). These motions are now ripe for disposition; for the reasons that follow, they are denied. Foxway and Gateway are ordered to file answers.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to dismiss a case for lack of personal jurisdiction. "When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden 'to come forward with sufficient facts to establish that jurisdiction is proper.'"[1]  Accordingly, once the defense is raised, a plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence."[2]  And "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion" to dismiss.[3]

The plaintiff's burden to establish personal jurisdiction is reduced, however, where a district court, when presented with a motion to dismiss under Rule 12(b)(2), does not hold an evidentiary hearing.  In such circumstances, the plaintiff "need only establish a prima facie case of personal jurisdiction."[4]  Moreover, before an evidentiary hearing, "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff."[5]

---

[1]   *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

[2]   *Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 169 (M.D. Pa. 2019) (internal quotation marks omitted) (quoting *Time Share Vacation Club v. Atl. Resorts*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

[3]   *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (citation omitted).

[4]   *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

[5]   *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (alteration in original) (internal quotation marks and citations omitted).

### B.      Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to assert the defense of improper venue.  "[A] motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense."[6] "It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it."[7]

"The parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge."[8] "Whatever the nature of the parties' submissions, the court is bound to view the facts in the light most favorable to the plaintiff."[9]

### C.      Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a claim"[10] and "streamlines litigation by dispensing with needless discovery and factfinding."[11] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive

---

[6]   *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982).

[7]   *Id.*

[8]   *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005).

[9]   *Id.*

[10]  *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[11]  *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

issue of law."[12]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[13]

Following the Roberts Court's "civil procedure revival,"[14] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[15] and *Ashcroft v. Iqbal*[16] tightened the standard that district courts must apply to 12(b)(6) motions.[17]  These cases "retired" the lenient "no-set-of-facts test" outlined in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[18]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[21]

---

[12]  *Id.* at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[13]  *Id.* at 327.

[14]  Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[15]  550 U.S. 544 (2007).

[16]  556 U.S. 662 (2009).

[17]  *Id.* at 670.

[18]  *Id.*

[19]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[20]  *Id.*

[21]  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (cleaned up).

Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[22]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[23]  No matter the context, however, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[24]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[25]  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[26]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must tak[e] note of the elements [the] plaintiff must plead to state a

---

22  *Twombly*, 550 U.S. at 556.

23  *Iqbal*, 556 U.S. at 679.

24  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

25  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

26  *Iqbal*, 556 U.S. at 678 (internal citations omitted).

27  *Id.  See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[28]

When deciding a motion to dismiss, a Court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[29] Normally, to consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[30]  But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion.  A Court may consider any documents that are integral or explicitly relied upon in the complaint.[31] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[32]  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[33]  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[34]  In this matter, I find that these conditions have been met, and will consequently consider the parties' attachments.

---

[28] *Connelly*, 809 F.3d at 787 (internal quotation marks and citations omitted).
[29] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).
[30] *See* Fed. R. Civ. P. 12(d).
[31] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).
[32] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[33] *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
[34] *Faulkner*, 463 F.3d at 134.

## III.   FACTS ALLEGED IN THE AMENDED COMPLAINT

Plaintiff Robert C. Allen lives in Owego, New York.[35]  On October 20, 2019, Allen's ex-wife Darlene Allen was driving from his New York home to her home in Bradford County, Pennsylvania.[36]  Allen's minor children, T.G.A. and Z.D.A, accompanied her.[37]

As Ms. Allen headed towards Pennsylvania, a deer abruptly dashed out in front of her car.[38]  So Ms. Allen slowed her car, coming to a stop.[39]  But Volodymyr Frolyak rear-ended Ms. Allen's vehicle with a tractor-trailer, killing both children.[40]

Though the accident occurred in New York, this tractor-trailer was destined for Pennsylvania.[41]  Canadian corporations Foxway and Gateway had agreed to haul this freight to Pennsylvania for Tempel Steel, an Illinois corporation.[42]

At their times of death, both children lived in Pennsylvania.[43]  Indeed, both were born, raised, and ultimately buried in Pennsylvania.[44]  Their respective estates were also opened in Bradford County, Pennsylvania.[45]  As administrator of his children's estates, Allen sued.[46]

---

[35]  Doc. 17 at ¶ 1.
[36]  *Id.* at ¶¶ 46–48.
[37]  *Id.* at ¶ 48.
[38]  *Id.* at ¶ 49.
[39]  *Id.* at ¶¶ 50–52.
[40]  *Id.* at ¶¶ 53–56.
[41]  Doc. 44, Ex. A.
[42]  Doc. 17 at ¶¶ 10, 13–14, 33, 80.
[43]  *Id.* at ¶¶ 3–4.
[44]  *Id.* at ¶¶ 5–6.
[45]  *Id.* at ¶ 7.
[46]  *Id.* at 1.

## IV.   DISCUSSION

### A.     Personal Jurisdiction

First, Foxway and Gateway argue that this Court lacks personal jurisdiction over them.   "A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."[47]   Pennsylvania's long-arm statute allows courts to exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States."[48]   The proper question before the Court is therefore whether exercising jurisdiction over the parties would comply with the constitutional requirements of due process.

To satisfy due process, a court must establish that a defendant has sufficient "minimum contacts" with the state in which the court sits "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."[49] "Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."[50]   I conclude that this Court lacks general jurisdiction but has specific jurisdiction over Foxway and Gateway.

---

[47]   *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (internal quotation marks omitted) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)).

[48]   42 Pa. C.S.A. § 5322(b).

[49]   *Baker v. LivaNova PLC*, 210 F. Supp. 3d 642, 647 (M.D. Pa. 2016) (Jones, J.) (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

[50]   *Metcalfe*, 566 F.3d at 334.

1.      **General Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[51]   "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."[52]   But "in an exceptional case," "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."[53]  Indeed, "it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'"[54]

Here, this Court does not have general jurisdiction over Foxway or Gateway. Neither Defendant is incorporated in Pennsylvania.[55]  And neither Defendant has an office, much less its principal place of business, in Pennsylvania.[56]  These paradigm

---

[51]   *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).

[52]   *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).

[53]   *Id.* n.19.

[54]   *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

[55]   Doc. 17 at ¶¶ 10, 14.

[56]   *See* Doc. 22, Ex. A at ¶ 4; Doc. 37, Ex. 1 at ¶¶ 7, 15–16.

bases for general jurisdiction indicate that Foxway and Gateway are not at home in Pennsylvania.

Allen counters that Foxway's and Gateway's affiliations with Pennsylvania are so "continuous and systematic" as to render them essentially at home in Pennsylvania. Specifically, Allen claims that Foxway frequently hauled freight into and out of Pennsylvania.[57] Allen also claims that Gateway brokered an average of three loads of freight into and out of Pennsylvania daily.[58]

In other words, Allen points to Foxway's and Gateway's business activities in Pennsylvania. "But in-state business . . . does not suffice to permit the assertion of general jurisdiction."[59] "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."[60] In this light, Foxway's and Gateway's activities in Pennsylvania are not "so substantial and of such a nature as to render" them at home in Pennsylvania.[61]

Allen further counters that Foxway's designation of a registered agent supports this Court's exercise of general jurisdiction.[62] To obtain operating authority from the Federal Motor Carrier Safety Administration ("FMCSA"), Foxway

---

[57] Doc. 27 at 13.
[58] Doc. 44 at 11–12.
[59] *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (holding that Montana court did not have general jurisdiction even though defendant-corporation had "over 2,000 miles of railroad track and more than 2,000 employees in Montana").
[60] *Daimler*, 571 U.S. at 139, n.20.
[61] *Id.* n.19.
[62] Doc. 27 at 14–16.

designated an agent to receive process in all fifty states, including Pennsylvania.[63] But federal district courts have repeatedly "rejected the argument that designation of an agent under the Motor Carrier Act alone implies consent to personal jurisdiction."[64]   So Foxway's designating an agent to comply with federal requirements does not adequately demonstrate general jurisdiction.   In sum, this Court cannot exercise general jurisdiction over Foxway or Gateway.

## 2.     Specific Jurisdiction

"There are two prongs to the specific jurisdiction analysis.   First, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state.   Second, the contacts must give rise to—or relate to—plaintiff's claims."[65]   Foxway disputes only the second prong.   But Gateway disputes both prongs.   I address specific jurisdiction over each Defendant, beginning with Foxway.

---

[63]   *Id.* at 15–16.

[64]   *Landreville v. Joe Brown Co.*, No. CIV.A. 06-5568, 2008 WL 910009, at *3 (E.D. Pa. Apr. 2, 2008).   *See also Davis v. Quality Carriers, Inc.*, No. CIV.A. 08-4533 (SRC), 2009 WL 1291985, at *6 (D.N.J. May 7, 2009) ("[T]his court rejects the non-movants' argument that Bourassa's designation of a national agent for service of process explicitly or implicitly indicated its consent to personal jurisdiction in New Jersey."); *Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp. 2d 730, 732 (D. Md. 2003) ("Gaines's designation of an agent for service of process pursuant to the Interstate Commerce Act does not provide the 'consent' of the corporation to be sued in the State of Maryland for a matter unrelated to its contacts with the state.").

[65]   *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (citations omitted).

### a.    Foxway

Foxway argues that Allen's claims do not relate to Pennsylvania because the accident occurred in New York, before the tractor-trailer reached Pennsylvania.  But the Supreme Court of the United States has held that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[66]  Indeed, federal courts have exercised specific jurisdiction in cases involving accidents that occurred in other jurisdictions.[67]

For example, in *Theunissen v. Matthews*, a machine crushed a truck driver's hand in Canada.[68]  But this happened while the truck driver was picking "up a load of lumber destined for . . . Michigan."[69]  And the truck driver "would have sustained no injury" "but for [the Canadian defendant's] alleged business contacts with" Michigan.[70]  Thus, the United States Court of Appeals for the Sixth Circuit held that

---

[66]    *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

[67]    *See, e.g.*, *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 325 (3d Cir. 2007) (allowing district court to exercise specific jurisdiction even though the accident at issue occurred in Barbados); *Thomas v. Ford Motor Co.*, 289 F. Supp. 3d 941, 947 (E.D. Wis. 2017) (exercising specific jurisdiction "[e]ven though the [plaintiffs'] accident did not occur in Wisconsin"); *Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554, 561 (M.D.N.C. 2015) (exercising specific jurisdiction even though the accident occurred in Georgia); *Busch v. Sea World of Ohio*, 95 F.R.D. 336, 340 (W.D. Pa. 1982) (exercising personal jurisdiction even though the accident occurred in Ohio).

[68]    935 F.2d 1454, 1455–56 (6th Cir. 1991).

[69]    *Id.*

[70]    *Id.* at 1461.

the Eastern District of Michigan had personal jurisdiction over the Canadian lumber-yard operator.[71]

Similarly, Foxway's tractor-trailer was destined for Pennsylvania when it killed Allen's children.[72]   Indeed, Foxway "transported freight into and out of Pennsylvania on numerous occasions."[73]   Because Foxway's freight haul to Pennsylvania killed Allen's children, Allen's claims arise out of or relate to Foxway's business contacts with Pennsylvania.  Foxway's motion to dismiss for lack of personal jurisdiction is therefore denied.

### b.    Gateway

Gateway argues that it does not have Pennsylvania contacts because it conducts all its business from Canada and does not have offices, licenses, employees, or property in Pennsylvania.  "While it may be true that [Gateway has] no physical connection with the forum, that is not dispositive."[74]   "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."[75]   Still, "it is essential in each case that there be some act by which the defendant

---

[71] *Id.* at 1465.
[72] Doc. 23 at 2–3, 11.
[73] *Id.* at 10–11.
[74] *Mellon*, 960 F.2d at 1225.
[75] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[76]

Here, Gateway arranged or brokered numerous shipments departing from or arriving in Pennsylvania.[77] These include the freight haul to Pennsylvania that killed Allen's children.[78] By repeatedly arranging transportation to and from Pennsylvania and thereby profiting, Gateway "purposefully availed itself of the privilege of conducting business within Pennsylvania."[79] Thus, Allen meets the first prong of minimum contacts with Pennsylvania.

As for the second prong, Gateway argues that Allen's claims arise from a car accident in New York and thus do not relate to its Canadian brokerage conduct. But as I explained above, the accident's New York location does not vitiate this Court's specific jurisdiction. Because Gateway arranged a freight haul to Pennsylvania that killed Allen's children, Allen's claims arise out of or relate to Gateway's business contacts with Pennsylvania.[80] Thus, Allen satisfies both prongs of the specific jurisdiction analysis. And Gateway's motion to dismiss for lack of personal jurisdiction is denied.

---

[76] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[77] Doc. 38 at 17 ("Further, for more than three years prior to the alleged collision, Gateway only brokered 4,381 deals involving shipments departing from or arriving in Pennsylvania.").

[78] *Id.* at 11–12.

[79] *D'Jamoos*, 566 F.3d at 101, 103 (finding no personal jurisdiction because defendant "did not profit from activities in Pennsylvania").

[80] *See Theunissen*, 935 F.2d at 1464.

### B.     Venue

#### 1.     Dismissal

Next, Foxway and Gateway move to dismiss for improper venue.[81]   The United States Supreme Court addressed venue against alien defendants in *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*[82]   There, a Canadian corporation sought to dismiss for improper venue.[83]   But the Supreme Court reaffirmed the "long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special."[84]   And under this alien-venue rule, the Canadian corporation could "be sued in any district."[85]

In 2011, Congress amended the general venue statute, 28 U.S.C. § 1391.  But "Congress did not clearly make—and did not otherwise express an intent to make—a change to the [alien-venue] rule as it affects foreign corporations."[86]  So *Brunette* still controls.[87]

---

[81]   *See* Doc. 23 at 11–12 ("Also supporting such dismissal, however, is venue in this suit not being properly situated in the Middle District of Pennsylvania. . . . Again, with venue in this action being improperly situated in the Middle District of Pennsylvania, this matter can be dismissed as to Foxway Transportation, albeit without prejudice."); *see also* Doc. 38 at 21–22.

[82]   406 U.S. 706, 713–14 (1972).

[83]   *Id.* at 707.

[84]   *Id.* at 714.

[85]   *Id.* at 708.

[86]   *In re HTC Corp.*, 889 F.3d 1349, 1358 (Fed. Cir. 2018).

[87]   *Id.* at 1361 ("Because this case does not involve the sole clear modification Congress made to the rule in 2011, the rule, 'which has prevailed throughout the history of the federal courts, controls this case.'") (quoting *Brunette*, 406 U.S. at 714).

Like the *Brunette* defendant, Foxway and Gateway are Canadian corporations.[88]  And as alien corporations, Foxway and Gateway are "wholly outside the operation of all the federal venue laws."[89]  Thus, Allen may sue Foxway and Gateway in this district.

Gateway counters that the alien-venue rule does not apply here because only two of the four defendants are foreign.[90]  But the domestic defendants here do not dispute venue, much less affect the alien-venue rule's applicability.[91]  Indeed, Gateway does not cite caselaw requiring all defendants to be foreign before the alien-venue rule can apply against particular foreign defendants.  28 U.S.C. § 1391 does not require this either.  So the alien-venue rule still applies here.  And Foxway's and Gateway's motions to dismiss for improper venue are denied.

### 2.   Transfer

Alternatively, Foxway moves to transfer venue under 28 U.S.C. § 1406(a).[92]  But Foxway does not move to transfer venue under 28 U.S.C. § 1404(a).[93]  This statutory difference is critical.

---

[88]  *See* Doc. 23 at 2 ("Foxway is a privately-held Ontario, Canada corporation.); Doc. 38 at 10 ("Gateway is a Canadian corporation having a principal place of business in Burlington, Ontario, Canada.").
[89]  *Brunette*, 406 U.S. at 714.
[90]  Doc. 47 at 14–15.
[91]  Docs. 33, 36.
[92]  Doc. 22 at 2.
[93]  Doc 23 at 12.

"Although both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege."[94]   Unlike § 1404(a), § 1406(a) "condition[s] transfer on the initial forum's being 'wrong.'"[95]   "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws."[96]

Here, venue is proper because the alien-venue rule allows Allen to sue Foxway in this district.   And "§ 1406 does not apply when, as here, venue is proper."[97]   Because § 1406 does not apply here, Foxway's motion to transfer venue under § 1406(a) is denied.

### C.     Merits

Next, Gateway moves to dismiss because Allen has not plausibly alleged an employment relationship, a joint venture, or punitive damages.   I address each contention in turn.   In sum, Gateway's motion to dismiss for failure to state a claim is denied.

---

[94]   *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964).
[95]   *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013).
[96]   *Id.* at 55.
[97]   *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988).

### 1.    Employment Relationship

Gateway argues that Allen does not sufficiently plead that Gateway employed or otherwise controlled Volodymyr Frolyak, the tractor-trailer's driver.   Under Pennsylvania law, "control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status."[98]

Here, Allen alleges that the Defendants, including Gateway, exercised complete control over the dispatching and routing of the tractor-trailer Frolyak drove at the time of the crash.[99]   These allegations permit the inference that Gateway had control over how Frolyak drove the tractor-trailer.   Accordingly, Allen has sufficiently pled an employment relationship between Gateway and Frolyak.

### 2.    Joint Venture

Gateway also argues that Allen has not plausibly alleged its engagement in a joint venture.  A joint venture "must arise from a contractual basis . . . ."[100]  To form a joint venture, "(1) each party to the venture must make a contribution . . . ; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction."[101]

---

[98]   *Universal Am-Can, Ltd. v. W.C.A.B. (Minteer)*, 762 A.2d 328, 333 (Pa. 2000).
[99]   Doc. 17 at ¶¶ 73–74.
[100]  *McRoberts v. Phelps*, 138 A.2d 439, 443 (Pa. 1958).
[101]  *Id.* at 443–44 (citation omitted).

Here, Allen alleges that Tempel, Foxway, and Gateway provided freight services through a joint venture, which they memorialized in a contract.[102] Allen also alleges that each entity contributed capital, materials, services, or knowledge for the load Frolyak was transporting.[103] Allen further claims that these Defendants shared all the profits their joint venture generated.[104] These details all go to the elements of a joint venture under Pennsylvania law.[105] Thus, Allen has plausibly alleged that Gateway engaged in a joint venture.

### 3.    Punitive Damages

Finally, Gateway argues that Allen has not plausibly alleged punitive damages. But Allen alleges that Frolyak exceeded Federal Motor Carrier Safety Regulations' hour limits at the time of the crash and had prior speeding violations.[106] Allen further alleges that Gateway entrusted a tractor-trailer to Frolyak despite his previous violations and failed to properly monitor, train, and supervise Frolyak.[107] At the pleading stage, these allegations plausibly indicate punitive damages.[108] Gateway's motion to dismiss for failure to state a claim is therefore denied.

---

[102]   Doc. 17 at ¶¶ 30, 182.

[103]   *Id.* at ¶ 183.

[104]   *Id.* at ¶ 184.

[105]   *McRoberts*, 138 A.2d at 443.

[106]   Doc. 17 at ¶¶ 62, 65.

[107]   *Id.* at ¶¶ 160–77.

[108]   *See Delamarter v. Couglar*, No. 3:16CV665, 2016 WL 3951663, at *3 (M.D. Pa. July 21, 2016) (denying motion to dismiss punitive-damages claim because "Plaintiffs allege that CTI entrusted a tractor trailer to Couglar without ascertaining his ability to operate the vehicle safely," "also allege that CTI allowed Couglar to operate the vehicle when they knew or should have known that Couglar was too fatigued to drive," and "further claim that CTI failed to