## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT C. ALLEN, as Administrator of the ESTATES OF T.G.A. and Z.D.A., | No. 4:21-CV-00156 |
| | (Chief Judge Brann) |
| Plaintiff, | |
| v. | |
| FOXWAY TRANSPORTATION, INC., TEMPEL STEEL, and GATEWAY FREIGHT SYSTEMS, INC., | |
| Defendants. | |

## MEMORANDUM OPINION

### DECEMBER 7, 2023

This case arises out of a tragic motor vehicle accident which resulted in the death of two children. After the children's mother hit a deer, their vehicle was disabled in the path of a tractor trailer driven by an employee of Foxway Transportation Inc., a motor carrier retained by Gateway Freight Systems, Inc., to deliver a shipment for Tempel Steel. The ensuing collision killed the Allen children. Plaintiff Robert C. Allen, as the administrator of his minor children's estates, sued Foxway, Gateway, and Tempel, seeking to hold them liable for his children's deaths.

Currently pending before the Court are Partial Motions for Summary Judgment filed by Allen as to certain claims against Gateway, and a Motion for Summary Judgment filed by Gateway. Because the Court finds that Gateway, as a

broker, is not liable for the actions of Foxway or its driver, but that a material dispute exists regarding whether Gateway negligently entrusted Foxway with the shipment, the Court will deny Allen's motions in part, grant Gateway's motion in part, and reserve judgment on the issue of negligent entrustment.

## I.     RELEVANT PROCEDURAL BACKGROUND

On January 28, 2021, Allen initiated this suit against Defendants Foxway Transportation, Inc., Tempel Steel, Gateway Freight Systems, Inc., and State Farm Mutual Insurance Company.[1] Allen amended his complaint on April 22, 2021,[2] and the Court denied motions to dismiss the amended complaint filed by Foxway[3] and Gateway[4] on January 27, 2022.[5] Allen dismissed his claims against State Farm on September 30, 2022.[6]

Against Gateway, Allen brings the following claims for relief: Damages under the Pennsylvania Wrongful Death and Survival statutes (Counts V and VI); vicarious liability (Count VII); "Negligent and/or Reckless Hiring / Supervision / Retention / Negligent Selection" of Volodymyr Frolyak (Count VIII) and Foxway

---

[1]   Compl., Doc. 1.
[2]   Am. Compl., Doc. 17.
[3]   Foxway Mtn. Dismiss, Doc. 22.
[4]   Gateway Mtn. Dismiss, Doc. 37.
[5]   Jan. 27, 2022 Ord., Doc. 51.
[6]   Notice of Dismissal, Doc. 89; Oct. 19, 2022 Ord., Doc. 95.

Transportation (Count IX); Negligent Entrustment (Count X); and Joint Venture (Count XI).[7]

On April 13, 2023, Allen filed two partial motions for summary judgment on the issues of vicarious liability[8] and negligent hiring.[9] On April 14, 2023, Gateway filed a motion for summary judgment, asking the Court to dismiss all the claims against it.[10] On April 24, 2023, Gateway filed a letter with the Court, requesting a status conference regarding Allen's reliance on two previously undisclosed expert witnesses in his motions, and asking the Court to adjust the briefing schedule to permit Gateway to retain a rebuttal expert.[11] The Court held a status conference and granted Gateway's request.[12] Then, the Court was once again asked to step in and modify the briefing schedule to accommodate Allen's request to depose Gateway's expert.[13] On October 13, 2023, exactly six months and forty docket entries after the first motion for summary judgment was filed, the final reply briefs trickled in. The motions were finally ripe for disposition.[14]

---

[7]   Am. Compl., Doc. 125.
[8]   Mot. Summ. J. re: Vicarious Liability ("VL MSJ"), Doc. 111.
[9]   Mot. Summ. J. re: Negligent Hiring ("NH MSJ"), Doc. 113.
[10]   Gateway Mot. Summ. J. ("Gateway MSJ"), Doc. 117.
[11]   Apr. 24, 2023 Gateway Letter, Doc. 119.
[12]   May 4, 2023 Ord., Doc. 128.
[13]   Aug. 11, 2023 Gateway Letter, Doc. 136; Aug 23, 2023 Ord., Doc. 140.
[14]   VL Br., Doc. 112; NH Br., Doc. 114; Gateway MSJ Br., Doc. 125; Gateway MSJ Opp., Doc. 131; Gateway MSJ Reply, Doc. 142; VL Opp., Doc. 143; NH Opp., 144; VL Reply, Doc. 149; NH Reply, Doc. 150.

And yet, upon review of the parties' briefs, the Court noted that they had little to say about the gating issue of this case: whether Voldymyr Frolyak, the Foxway driver, was liable for the accident in the first instance.[15] The Court asked the parties for simultaneous, supplemental briefs on that issue, which were filed on November 20, 2023.[16]

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  As expressed by the Supreme Court of the United States in *Celotex Corp. v. Catrett*, summary judgment is required where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" on an issue that the "party will bear the burden of proof at trial."[17] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[18]

---

[15]   Nov. 6, 2023 Ord., Doc. 154.

[16]   Gateway Supp. Br., Doc. 155; Allen Supp. Br., Doc. 156.

[17]   477 U.S. 317, 322 (1986).

[18]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[19] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved by only a finder of fact because they may reasonably be resolved in favor of either party."[20] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[21] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[22]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[23] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[24] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[25]

---

[19]   *Celotex*, 477 U.S. at 323.

[20]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[21]   *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

[22]   *Port Auth. Of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).

[23]   *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 422, 448 (1871)).

[24]   *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[25]   Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[26]

"'This standard does not change when the issue is presented in the context of cross-motions for summary judgment.'"[27] "When both parties move for summary judgment, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'"[28]

## B.   Local Rule 56.1

In support of his motions for summary judgment on the issues of vicarious liability and negligent hiring, Allen filed two statements of material facts that run 83 and 107 paragraphs respectively.[29] Gateway asks the Court to strike Allen's statements of facts because they are "replete with legal conclusions, expert analysis, opinion, and mischaracterizations without references to the record or supporting facts."[30] Allen suggests that Gateway is "precluded from asserting any issue with respect to Plaintiff's concise statement of facts" on the grounds that 1) the Court has

---

[26]   Fed. R. Civ. P. 56(c)(3).

[27]   *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v City of Phila*, 826 F.2d 214, 216 (3d. Cir. 1987)).

[28]   *Id.* (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

[29]   VL Statement of Material Facts ("VL SMF"), Doc. 112-1; NH SMF, Doc. 114-1.

[30]   VL Opp. 8; NH Opp. 7.

already rejected Gateway's arguments and 2) his statements comply with the Federal and Local Rules.[31]

Local Rule 56.1 requires all motions for summary judgment to be "accompanied by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." The party opposing summary judgment must then include with its papers an answer to the movant's statement of facts in which it identifies, in corresponding numbered paragraphs, those material facts which the nonmovant contends there is a genuine issue to be tried.[32] "Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."[33] Material facts in the movant's statement "will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."[34]

When reviewing statements of facts, the Court first looks to see if the parties agree on a fact. If so, the Court accepts the fact as stated. If not, the Court will look to the parts of the record cited by each party and make its own determination as to whether the fact in question is disputed. If a party has not supported its stated fact or

---

[31] VL Reply 46; NH Reply 55.
[32] LR 56.1.
[33] *Id.*
[34] *Id.*

its denial of that fact with a record citation, then the Court will either assume that the fact is disputed or admitted accordingly. No more, no less.

The remedy to a deficient statement of facts is, therefore, simply an adequate response. For instance, to the extent that, as Gateway claims, half of Allen's statement of facts in support of his motion for summary judgment on the issue of vicarious liability do not "contain any reference, vague or otherwise, to the record," all Gateway need do is respond to those paragraphs accordingly. Gateway could have simply denied each of the SMFs' paragraphs with citations to the record or by identifying statements which are simply legal argument and that would have been sufficient to obviate any concerns of a false narrative.

Unfortunately, Gateway did not file such an answer. Instead, perhaps following Allen's lead, filed "counterstatements of facts."[35] The purpose of Rule 56.1 is to "structure a party's summary judgment legal and factual theory that permits and facilitates the court's direct and accurate consideration to the motion."[36] "The movant's statement and the non-movants response should enable 'the court to

---

[35]   Allen, due to the changes in the briefing schedule, filed his opposition to Gateway's motion prior to Gateway filling its oppositions. Gateway MSJ Counterstatement of Facts ("Gateway MSJ CSF"), Doc. 131-1; VL CSF, Doc. 143-1; NH CSF, Doc. 144-1.

[36]   *Williams v. Pennsylvania State University*, 2023 WL 6626789, at *4 (M.D. Pa. Oct. 11, 2023) (quoting *Park v. Veasie*, 2011 WL 1831708, at *3 (M.D. Pa. May 11, 2011); *Hartshorn v. Throop Borough*, 2009 WL 761270, at *3 (M.D. Pa. Mar. 19, 2009)).

identify contested facts expeditiously.'"[37] Competing statements of facts, let alone six of them, do not serve this purpose.

Though the impulse to correct the record is understandable, it is unnecessary. A party opposing summary judgment need not correct the record to survive summary judgment. Instead, the non-movant simply must show that there is a genuine dispute of material fact. If the non-movant wants to present its own narrative, then it may file its own motion for summary judgment (as Gateway did).

In any case, Gateway is not harmed by any deficiencies in Allen's statements of facts because Allen does not rely on his statements of facts in his briefs. Rather than refer to his statements of facts in his briefing, Allen simply incorporates the cited portions of the record into his brief. Rather than "facilitating direct and accurate consideration to the motion," this results in statements of fact that are mere surplusage.

Accordingly, though the parties' statements and counterstatements of fact are of limited utility here, the Court will consider them to the extent that they are helpful.

## C.    Conflicting Expert Witness Opinions

Gateway also objects to the opinions of Allen's proffered expert witnesses, Jon Paul Dillard and Kenneth Lacey.[38] Allen relies heavily on the opinions of Dillard

---

[37]  *Id.* (quoting *Park*, 2011 WL 1831708, at *3; *Pinegar v. Shinseki*, 2009 WL 1324125, at *1 (M.D. Pa. May 12, 2009)).

[38]  VL Opp. 23; NH Opp. 22; Gateway MSJ Reply 13.

and Lacey in his motions.[39] In response, Gateway retained a rebuttal expert, Lane VanIngen.[40] Where issues turn on opposing expert reports, "a genuine issue of fact patently exists preventing summary judgment."[41]

Predictably, Allen and Gateway both suggest that the Court should simply disregard their opponent's expert opinions. Though the parties have identified issues that may require the Court to exclude the experts' opinions, that issue is not properly before the Court. Neither party has filed a motion to exclude an opposing expert and the objections raised in the parties' papers are insufficient to allow the Court to permit the Court to exclude the evidence under Federal Rule of Evidence 702. The Third Circuit has emphasized that, prior to excluding expert evidence on a motion for summary judgment, that the Court must "provide the [parties] with sufficient process for defending their evidentiary submissions."[42]

Gateway emphasizes that its motion "is not at all reliant on Mr. VanIngen or any other expert analysis—it relies solely on the facts of the case."[43] But the Court cannot simply overlook expert testimony that Allen offers in opposition to Gateway's motion.

---

[39] *E.g.*, VL Br. 40-41, 54-55, 69; NH Br. 6-7, 11-12, 27-29, 32-33, 38.

[40] VanIngen Report, Doc. 143-2.

[41] *In re Sorin 3T Heater-Cooler Sys. Prod. Liab. Litig.*, 2021 WL 8016522 (M.D. Pa. July 19, 2021) (collecting cases).

[42] *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir. 1999) (quoting *In re Paoli Railroad Yard PCB Litig.*, 916 F.2d 829, 854 (3d Cir. 1990)).

[43] Gateway MSJ Reply 13 n.5.

However, "an expert cannot testify to [a] legal conclusion"[44] and, to the extent that the parties' experts do so, the Court will disregard such opinions.[45] In such instances, the Court will instead look to the facts and conclusions underlying the expert's opinion to determine whether there is a material issue of fact.

## III.   FACTUAL BACKGROUND[46]

On October 20, 2019, Darlene L. Allen, with her children T.G.A. and Z.D.A. in the back seat, struck a deer while driving on New York State Route 17 in Tioga County, New York.[47] Ms. Allen's Mitsubishi Mirage was disabled as a result, and came to a rest in the right-hand lane of SR-17.[48] Traveling behind Ms. Allen, was Volodymyr Frolyak, operating a commercial tractor trailer carrying a load of steel laminations.[49] Unfortunately, despite its name, Ms. Allen's Mirage was no optical illusion and Frolyak was unable to stop, or adequately slow his vehicle before it violently collided with the Allen's vehicle, killing the two children.[50]

---

[44]   *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 129 (3d Cir. 2020).

[45]   *See, e.g.*, VL Br. 40 (Allen's expert, Dillard, opining that Gateway "functioned as the motor carrier in this specific transportation cycle").

[46]   Due to the nature of the parties' statements of facts, the Court is presented with six different statements which significantly overlap with one another. The Court will rely on the parties' statements as to Gateway's Motion in this section, as Gateway's Motion encompasses all of the claims against it.

[47]   Gateway MSJ SMF ¶¶ 1, 2; Gateway MSJ CSF ¶¶ 8-10. Allen frames this first collision as "a dear abruptly dash[ing] out into the road, causing [Darlene] to bring her vehicle to a complete stop." *Id.* ¶ 9.

[48]   Gateway MSJ SMF ¶ 2, 47; Gateway MSJ CSF ¶ 9.

[49]   Gateway MSJ SMF ¶ 3; Gateway MSJ CSF ¶¶ 4, 7.

[50]   Gateway MSJ SMF ¶¶ 3, 4; Gateway MSJ CSF ¶¶ 8, 11.

Frolyak, an employee of Foxway Transportation, Inc. and driving a 2016 Freightliner owned by Foxway, was delivering a shipment that originated at Tempel Steel's Canadian location to two locations in Pennsylvania.[51] Gateway, on Tempel's behalf, had retained Foxway to handle the shipment.[52] The parties agree on little else regarding the relationship between the parties, as will be discussed below.

## IV.   ANALYSIS

### A.   Driver Liability

Gateway argues in support of its Motion that Allen "has failed to adduce any facts indicating that any person or entity is actually culpable and at fault for either collision."[53] Whether Frolyak himself is liable for the accident is the threshold issue in this case: Gateway cannot be vicariously liable unless Frolyak himself is liable in the first instance. Opposing Gateway's Motion, Allen suggests, without any citation to the record, that it is "undisputed" and "unrefuted" Frolyak caused the accident when he was "inattentive, fatigued/distracted and otherwise operating the Freightliner in an unsafe, dangerous, and reckless condition."[54] The first citation to the record follows a reference to testimony by Deputy Samuel Warner that the crash "*could* have been 'an avoidable crash, rather than an unavoidable crash,'" but for

---

[51]   Gateway MSJ SMF ¶¶ 3, 26, 48-54; Gateway MSJ CSF ¶¶ 1-2.
[52]   Gateway MSJ SMF ¶¶ 48-54.
[53]   Gateway MSJ Br. 19.
[54]   Allen MSJ Opp. 67.

Frolyak's inattentiveness.[55] Allen then cites the report of his expert, Kenneth Lacey, who Allen says "opined there is no evidence of any other cause of the crash but driver unfitness, impairment, or exhaustion."[56]

Both statements mischaracterize the record. The cited testimony of Deputy Warner was elicited by a line of questioning in which counsel asked Warner to speculate as to what may have caused the accident, or how the accident could have been avoided.[57] In his report, Lacey concludes that Gateway's failure to properly investigate Foxway "was reckless, dangerous and directly resulted in the October 20, 2019 crash and its resulting injuries."[58] He offers no opinion regarding the crash itself.

The Court, worried that, in the midst of extensive briefing on derivative issues such as vicarious liability and negligent entrustment, Allen had missed the forest for the trees, requested the parties file supplemental briefing on the issue of whether Frolyak himself was liable for the accident.[59]

In his supplemental brief, Allen now suggests that "Frolyak reported fog at the time he collided with the Allen vehicle" and that, with his cruise control set at 64.5 mph, he was traveling at an unsafe speed given the conditions.[60] Allen relies

---

55   *Id.* (citing Warner Dep., Gateway MSJ Pl. Ex. V., Doc. 131-22 at 97:12-102:19).
56   *Id.* 68 (citing Lacey Report, Gateway MSJ Pl. Ex. T, Doc. 131-20, at 13-14).
57   Warner Dep. 97:12-102:19.
58   Lacey Report 14.
59   Nov. 6, 2023 Ord., Doc. 154.
60   Allen Supp. Br. 1-2.

heavily on the opinion of Accident Reconstruction Expert Joseph Hudak.[61] Mr. Hudak's report is dated November 20, 2023, a week after the Court requested the supplemental briefing.

This is now the second time that Allen has filed a brief relying on previously undisclosed expert opinion. As discussed above, the Court indulged Allen once, permitting him to belatedly complete his expert disclosures.[62] It will not do so again.

Federal Rule of Civil Procedure 26(a)(2) requires a party to complete its expert disclosures "at the times and in the sequence that the court orders."[63] A failure to do so precludes the party from relying on that witness "to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."[64] The Third Circuit has instructed, "[i]n considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, [courts] must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation."[65]

---

[61] *See generally id.*
[62] May 4, 2023 Ord., Doc. 128.
[63] Fed. R. Civ. P. 23(a)(2)(D).
[64] Fed. R. Civ. P. 37(c)(1).
[65] *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000).

All four factors support excluding Hudak's report. As noted its brief, "[t]o Gateway's knowledge the only reconstruction performed to date is by the New York State Police."[66] Gateway has not had the opportunity to evaluate Hudak's claims, or challenge them directly in a deposition and providing that opportunity would result in further delaying resolutions of motions filed in April.[67] There is no justification for, after nearly three years of litigation, failing to identify an expert witness on the core issue of this case until after the parties had completed briefing on motions for summary judgment.

Nevertheless, the record is insufficient to determine at summary judgment whether the conditions present at the time of the accident were severe enough to require Frolyak to reduce his speed. Therefore, the Court will continue to the balance of the parties' arguments.

### B.   Vicarious Liability

#### 1.   Common Law Employee-Employer

"Under Pennsylvania law, to establish vicarious liability, a plaintiff must show a master-servant relationship existed."[68] "The Pennsylvania Supreme Court set forth an array of factors to be considered when examining the employer-employee relationship:"

---

[66]   Gateway Supp. Br. 11 n.5.

[67]   *See* Aug. 23, 2023 Ord., Doc. 140 (extending briefing deadlines in response to Allen's request to depose Gateway's expert witness).

[68]   *Ciotola v. Star Trans. & Trucking, LLC*, 481 F. Supp. 3d 375, 390 (M.D. Pa. 2020).

(1) control of the manner in which the work is done; (2) responsibility for the result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) whether the work is part of the regular business of the alleged employer; (8) which party supplies the tools/equipment; and (9) whether the alleged employer has the right to terminate the employment at any time.[69]

"Not all factors are required to establish an employment relationship."[70] The factors entitled to the most weight are "whether the purported employer has the right to hire and fire the employee; whether the employer has the right to direct the manner of the employee's performance of the work; and whether the employer has the right to control the work to be completed."[71] Allen does not argue that Gateway supplied the truck or had the right to terminate Frolyak.[72]

Allen argues that "Gateway exercised, or had the right to exercise, the requisite degree of control over Mr. Frolyak such that Gateway must be deemed his common law "employer" and, therefore, vicariously liable for his conduct."[73] Nowhere in the twenty pages that Allen devotes to this issue does he cite any authority regarding what suffices to establish the "requisite degree of control." Instead, Allen offers a prime example of why requesting extra words from a court is not a substitute for exercising editorial discretion as he gets lost along the way and

---

[69]   *Id.* (collecting cases).
[70]   *Id.* (quoting *Adames v. May Furniture*, 2019 WL 8937042, at *7 (M.D. Pa. Nov. 26, 2019)).
[71]   *Id.* (quoting *Adames*, 2019 WL 8937042, at *7).
[72]   *See* VL Br. Section IV.A.1. (discussing only factors 1 through 7).
[73]   *Id.* at 15.

argues, not that Gateway had control over Frolyak, but that Gateway was a "motor carrier." That is a separate issue, which the Court discusses separately, and says nothing about the level of control Gateway had over Frolyak.

The only substantive mention of Frolyak in this section of Allen's brief is where he argues that, because Gateway communicated with Tempel regarding the timing of the product and that it was an "exclusive truckload," Gateway was "responsible for all aspects of the management of the freight . . . including the dispatching and routing of Mr. Frolyak."[74] There is no evidence that Gateway instructed Frolyak to take a specific route, and that Gateway "handled the . . . time frame in which the product was to be picked up"[75] "does not, without more, create the control necessary for the employer-employee relationship."[76]

On the contrary, Foxway assigned Frolyak and a city driver, Gurvinder Singh, to the Tempel load, without any direction from Gateway.[77] Foxway owned the Freightliner that Frolyak was driving. Contrary to Allen's frivolous argument that Gateway provided the route because Frolyak's route was constrained by the requirements that the shipment make it from "A to B" in a certain time window—

---

[74] VL Br. 27-28.
[75] *Id.*
[76] *Red Line Exp. Co. v. W.C.A.B. (Price)*, 588 A.2d 90, 96 (Pa. Cmwlth. 1991).
[77] Foxway Ans. to Am. Compl., Doc. 53 ¶¶ 73-74.

preventing him from taking a route "through California and then to Pennsylvania"[78]—Foxway provided the route.[79]

The Court also rejects Allen's conclusory arguments that driving a tractor-trailer does not require special skills or that Frolyak's work was an integral part of Gateway's regular business. As to the former, the Court is skeptical that "the ability to drive" a car translates to the ability to drive a tractor-trailer. As to the latter, Allen's "argument would essentially remove any distinction between brokers and motor carriers by making anyone involved in the shipment process an employee of the broker."[80]

In support of its own motion, Gateway argues that Allen's failure to "adduce any facts indicating Gateway directed or controlled Frolyak or had the right to do either."[81] In his opposition, Allen largely repeats his own arguments which, again, say very little about Gateway's relationship with Frolyak.[82] Instead, Allen suggests that Gateway "has failed to provide even a scintilla of evidence" in support of its position that "it cannot be a motor carrier."[83] As above, whether Gateway is a motor carrier is a separate question, which the Court will address below.

## 2.    Statutory Employee

---

[78]   VL Br. 43-45.
[79]   Foxway Ans. to Am. Compl. ¶¶ 73-74.
[80]   *Ciotola*, 481 F. Supp. 3d at 392.
[81]   Gateway MSJ Br. 28.
[82]   Gateway MSJ Opp. Section IV.A.1.
[83]   Gateway MSJ Opp. 31.

In the alternative, Allen argues that Gateway functioned as the *de facto* motor carrier and statutory employer of Frolyak. To determine whether an entity acted as a broker or a carrier, "courts look to 'how the party acted during the specific transaction at issue, which includes the understanding among the parties involved [and] consideration of how the entity held itself out.'"[84] "Thus, '[w]hether a company is a broker or a carrier is not determined by what the company labels itself, but by . . . its relationship to the shipper.'"[85] In making this determination, "the crucial question is whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the goods."[86] Factors which inform this inquiry are:

> (1) whether the entity promised to personally perform the transport and therefore legally bound itself to transport;
>
> (2) the type of services the entity offers;
>
> (3) whether the entity held itself out to the public as the actual transporter of goods; and
>
> (4) whether the entity's only role was to secure a third party to ship plaintiff's goods.[87]

---

[84] *Ciotola*, 481 F. Supp. 3d at 392 (quoting *Louis M. Marson Jr., Inc. v. Alliance Shippers, Inc.*, 438 F. Supp. 3d 326, 331 (E.D. Pa. 2020) (additional citations omitted)).

[85] *Id.* (quoting *Louis M. Marson, Jr., Inc.*, 438 F. Supp. 3d at 331; *Hewlett-Packard Co. v. Brother's Trucking Enters., Inc.*, 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005)).

[86] *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 287 (3d Cir. 2019) (citing *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1301 (11th Cir. 2018)).

[87] *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 (D. Md. 2022) (citing *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 2017 WL 5725057, at *6–7 (D.N.J. Nov. 28, 2017) *aff'd*, 767 F. App'x 284 (3rd Cir. 2019)).

Courts also look to "who arranged the details of the transport process" such as handling the route, packing the product, coordinating the travel and release of goods, whether the party acted as a go-between or served as a central point of communication for both the carrier and the shipper, and if the shipper knew who exactly was carrying the load.[88]

There is no evidence in the record that Gateway promised to personally perform the transport. On the contrary, when Tempel reached out to Gateway and asked Gateway to arrange for shipping, Gateway responded that it would "schedule and advise carrier name."[89] When Tempel reached out to Gateway, "it [was] known by Tempel that Gateway is only a broker."[90] Tempel understood Gateway to be offering its services as a broker, and not a carrier.[91]

Allen's expert, Dillard, suggests that Gateway had advertised itself as a "transportation provider" rather than a broker.[92] Even if the Court assumes Dillard is correct, whether Gateway held itself out to the public as a carrier is of limited significance here, where Tempel already knew Gateway was a broker. This is not a case where a shipper had been deceived by a broker's "attempt to gain business and

---

[88] *Ciotola*, 481 F. Supp. 3d at 392 (citing *Louis M. Marson, Jr., Inc.*, 438 F. Supp. 3d at 331).
[89] Doc. 118-14 at GFS_0017-18.
[90] Tempel 30(b)(6) Dep., Doc. 118-7 at 42:7-8; *accord* 119:25-120:15.
[91] *Id.* 119:25-120:15.
[92] VL Br. 41. In another example of the perils of relying on excess pages, Allen copies the same page-long block quote from Dillard's report twice in the same section of his brief. *Id.* at 54-55.

revenue disguised as a motor carrier."[93] Allen's argument on this point also proves too much. If Gateway is, as Dillard opines, misrepresenting its services by promoting itself as a carrier despite being only a broker, that is evidence that Gateway is, in fact, a broker. Whether Gateway's website runs afoul of the Federal Motor Carrier Safety Regulations may be an interesting question, but it is not one before the Court.

Allen argues that Gateway was responsible for the details of the shipping process, and therefore its role was beyond that of a mere middleman whose only role was to secure transportation for Tempel's goods. Allen notes that, once Tempel provided Gateway with the origin and delivery points of the shipment, it did not handle the route.[94] Neither did Gateway; Foxway did.[95] Allen observes that Foxway did not pack the product.[96] Again, neither did Gateway; Tempel did.[97] Allen suggests that no entity other than Gateway "was involved in the planning process" then immediately contradicts himself, stating that "the terms of the shipment were dictated by Tempel and Gateway with no input from Foxway."[98] Gateway's involvement in the "planning process" was limited to finding a carrier within two hours of Tempel's request so that Tempel could be "sure that [Gateway] would be

---

[93] *Id.*
[94] *Id.* at 43-45.
[95] Foxway Ans. to Am. Compl. ¶¶ 73-74.
[96] VL Br. at 45.
[97] Tempel 30(b)(6) Dep., Doc. 118-6, 78:12-79:25.
[98] VL Br. 46.

able to move the product for them."[99] It was Tempel who dictated when and where the shipment needed to be delivered.[100]

The Court is not aware of a bright line rule for distinguishing a "go-between" from a "central point of communication," but the above scenario illustrates the role of a broker. Gateway was "employed as a middleman to transact business . . . between different merchants."[101] Allen cannot avoid this conclusion by cherry picking examples of actions not taken by Foxway or Tempel, and automatically assigning the responsibility for those actions to Gateway.

Further, while Tempel did not know that Foxway itself was carrying the load, they did know that Gateway was not. Responding to Tempel's request for Gateway to find a carrier for the shipment, a representative from Gateway responded that she would advise Tempel of the carrier's name.[102] Gateway's apparent failure to follow up and inform Tempel that Foxway was carrying the load amounts to little more than a clerical error and is insufficient to render Gateway liable to the Allen family.

Resisting the inevitability of the conclusion that Gateway is a broker, Allen extensively discusses several documents, including bills of lading, terms of service,

---

[99] *Id.* (quoting Gateway 30(b)(6) Dep., Doc. 118-5, at 28:4-12).
[100] Doc. 118-14 at GFS_0017-18.
[101] *Broker*, Oxford English Dictionary Online Ed. (accessed Nov. 29, 2023); *see also* 49 U.S.C. § 13102(2) (defining broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation")
[102] Doc. 118-14 at GFS_0017-18

service agreements, pack lists, and invoices. There is less to Allen's seventy-page brief than meets the eye.

Gateway being listed as the "carrier" on documents it did not prepare or execute is insufficient to create an issue of material fact.[103] Terms and Conditions that bind Tempel and the customers who purchase its products are not relevant to the separate transaction of Tempel shipping the product. Invoices between Gateway and Tempel and Foxway are consistent with its role as a broker.[104]

During civil litigation, particularly litigation involving multiple corporate entities, the parties will produce countless documents. There will inevitably be documents that, if squinted at hard enough, give rise to all manner of colorable arguments. Though the material fact and reasonable juror standards may be low, they are not toothless. "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."[105]

---

[103] *See Delta Stone Prod. v. Xpertfreight*, 304 F. Supp. 3d 1119 (D. Utah 2018) (citing *Chubb Group of Ins. Co. v. H.A. Transp. Sys., Inc.*, 243 F.Supp.2d 1064, 1070 (C.D. Cal. 2002)) (invoices and bills of lading prepared by third parties that identify defendant as "carrier" insufficient to create material fact at summary judgment). *But see Tryg*, F. App'x at 288 (affirming denial of summary judgment and rejecting argument by purported broker that its history with shipper established that defendant was a broker rather than a carrier in the absence of supporting evidence).

[104] *See Minsa Corp. v. Almac Sys. Transp., Inc.*, 2011 WL 12907655, at *5 (N.D. Tex. June 10, 2011) (discussing process in which carrier will ordinarily invoice the broker in case where broker did not remit payment and carrier sought payment from shipper directly).

[105] *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting *Anderson*, 477 U.S. at 249–50).

The whole of the evidence relied on by Allen is less than the sum of its parts. Again, the inquiry is guided by the understanding of the parties to the transaction. None of the documents cited by Allen are sufficiently probative to controvert the clear understanding among Tempel, Foxway, and Gateway as to the roles of each as shipper, carrier, and broker respectively in the subject transaction. This fact is dispositive and is what distinguishes this case from those upon which Allen relies.[106] Gateway did not communicate with Frolyak, Foxway's driver and employee, or ask him to identify himself as an employee of Gateway.[107] Gateway did not bind *itself* to physically transport the shipment.[108]

Therefore, the Court will deny Allen's Motion as to the issue of vicarious liability and grant Gateway's Motion as to Count VII.[109]

### C.    Negligent Hiring, Selection, Retention, or Supervision

These theories of liability under Pennsylvania law are predicated upon an employer-employee relationship.[110] "The Third Circuit has taken this 'clear feature' of these claims within Pennsylvania's body of negligence law 'to be dispositive.'"[111]

---

[106]  *But cf. Tryg*, F. App'x at 288; *Contessa Premium Foods, Inc. v. CST Lines, Inc.*, 2011 WL 3648388, at *4 (C.D. Cal. Aug. 18, 2011) (observing that how the purported broker held itself out to the shipper is determinative).

[107]  *But cf. Ciotola*, 481 F. Supp. 3d at 393.

[108]  *But cf.* VL Br. 62 (and authorities cited therein).

[109]  The Court accordingly need not address the parties' arguments regarding whether Allen's release of Foxway and Foxway's employees and agents bars any recovery for derivative vicarious liability claims.

[110]  *Adames*, 2019 WL 8937042, at *8 (collecting cases).

[111]  *Id.* (quoting *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 490 (3d Cir. 2013)).

As the Court has established as a matter of law that there is no employer-employee relationship between Gateway and Frolyak, the Court will deny Allen's Partial Motion on Negligent Hiring, Selection, and Entrustment as to Counts VIII and IX and grant Gateway's Motion as to those Counts.

### D.    Negligent Entrustment

Pennsylvania has adopted the standard for negligent entrustment that is set out in Section 308 of the Restatement of the Law (Second) of Torts:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.[112]

Allen argues that Gateway "knew or should have known that Foxway was negligent in retaining its drivers, including Volodymyr Frolyak."[113] He asserts that, despite having access to the "Carrier411" system which would have alerted it to "the unsafe history of both Foxway and Volodymyr Frolyak," "Gateway entrusted a Commercial Motor Vehicle to Volodymyr Frolyak."[114]

Gateway argues that "no material facts indicate that Gateway controlled or had the right to control the shipment, the Foxway Freightliner, or any operator of the same, including Frolyak."[115] Gateway stresses that "[t]he facts demonstrate an

---

[112] *Phillips v. Lock*, 86 A.3d 906, 913 (Pa. Super. 2014).
[113] NH Br. 38.
[114] *Id.*
[115] Gateway MSJ Br. 41.

absence of a Gateway relationship with the Freightliner itself."[116] Further, Gateway argues that the record does not support Allen's assertion that Gateway "knew or should have known" that Foxway or Frolyak presented "an unreasonable risk of harm."[117]

The Court finds that, by possessing the authority to assign the shipment, and ultimately assigning it to Foxway, Gateway had the requisite control over the "activity" of shipping the goods. Allen, in support of his motion and in opposition to Gateway's, relies heavily on the expert opinion of Kenneth Lacey who opines that "Gateway made no effort to make certain Foxway, or any other motor carrier to which it entrusted its freight, operated safely, or [in] complian[ce] with federal or state regulations."[118] Gateway, through its own expert, argues that "Lacey's report contains opinions contrary to the FMCSR and industry standards."[119]

As discussed above, issues which turn on competing expert testimony are rarely fit for disposition on a motion for summary judgment. Ordinarily, the Court would simply deny the parties' motions and let the live issues proceed to trial. However, after consulting its crystal ball, the Court foresees the parties filing motions *in limine* on the eve of trial consistent with the objections they have raised in their briefing, seeking to exclude their opponent's proffered expert testimony. If

---

[116] *Id.* at 42.
[117] *Id.*
[118] Gateway MSJ Opp. 62.
[119] NH Opp. Section V.G.6.

either party were to prevail on such a motion, they would assuredly renew their motion for summary judgment.

Rather than kick the expert witness can down the road, the Court will require the parties to file any *Daubert* motions by December 28, 2023. Until those motions are briefed, the Court will reserve judgment on the issue of negligent entrustment. Further, as the availability of punitive damages turns on the degree that Gateway may have fallen short of the applicable standard of care, the Court will reserve judgment on that issue as well.

### E.   Joint Venture

Under Pennsylvania law, "[a] joint venture requires that: '1) each party must make a contribution of capital, materials, services or knowledge; 2) profits must be shared; and 3) there must be a joint proprietary interest in and right of mutual control over the subject matter of the enterprise.'"[120] "Once a party satisfies the test for a joint venture, the torts committed by one joint adventurer may be imputed upon other joint adventurers."[121]

Gateway asserts that Allen "has failed to adduce facts supporting any necessary element and any intention by and between Gateway, Foxway, and Tempel

---

[120] *Ciotola*, 481 F. Supp. 3d at 387 (quoting *Beavers v. West Penn Power Co.*, 436 F.2d 869, 873 (3d Cir. 1971)).

[121] *Id.* (citing *Beavers*, 436 F.2d at 873; *Friedman v. Wilson Freight Forwarding Co.*, 181 F. Supp. 327, 329 (W.D. Pa. 1960)).

Steel to enter into a joint venture concerning Frolyak and the subject shipment."[122] Allen's response borders on forfeiture of his claim. Allen suggests that "the use of the equipment in the transportation cycle . . . [is] akin to a distribution of profits."[123] Allen's argument, such as it is, would render the second prong of the joint venture test duplicative of the first. The contribution of the equipment, or other capital, services, or knowledge, is distinct from a distribution or sharing of profits.

Allen is the plaintiff, and it is his burden to show that there are material facts on which he could ultimately prevail on his claim. He offers none, nor does he offer any legal authority for his convoluted argument. The Court will therefore grant Gateway's motion for summary judgment as to Count XI.

## V. CONCLUSION

For the forgoing reasons, the Court will deny Allen's first motion for summary judgment on the issue of vicarious liability; deny Allen's second motion for summary judgment on the issue of negligent hiring; grant Gateway's motion for summary judgment as to the issues of vicarious liability, negligent hiring, and joint venture; and reserve judgment on the issue of negligent entrustment pending submissions from the parties regarding whether they wish to move to exclude the opposing parties' expert witnesses. The parties may file *Daubert* motions and accompanying briefs by December 28, 2023. Any briefs shall comply with the local

---

[122] Gateway MSJ Br. 44.
[123] Gateway MSJ Opp. 75.

rules.[124] Consistent with those rules, any response briefs are due on January 11, 2024 and reply briefs are due January 25, 2024. If the parties opt not to oppose the admissibility of the expert opinions by the deadline, the Court will enter an order denying the parties' motions for summary judgment as to the remaining issues.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[124]  The Court does not anticipate that the parties will need more than the 5,000 words provided for by Local Rule 7.8.